[Civ. No. 8278. Second Appellate District, Division One.—June 1, 1932.]

ISABELLE PETERSON, Respondent, v. ED W. HOPKINS, as Assessor, etc., Appellant.

Everett W. Mattoon, County Counsel, and J. H. O'Connor, Assistant County Counsel, for Appellant.

C. Morton Booth for Respondent.

CONREY, P. J.—In accordance with the provisions of section 3738 of the Political Code, the auditor of Los Angeles County furnished to defendant assessor of said county, blank "personal property" receipts, of the year 1931, in the required form and duly numbered, and charged the assessor with the number of receipts so issued and delivered. In said section 3738 it is provided that "On the first Monday in August, the assessor shall return all unused receipts, and the auditor shall credit him with all numbers returned."

This proceeding was commenced in the superior court by petition filed November 4, 1931. At that time, and thereafter, the assessor had in his possession a large number of said blank receipts, unused, and which he refused to return to the auditor. This is a proceeding by petitioner as a taxpayer of said county, to compel the return of said unused blank receipts, by the assessor to the auditor. From the judgment entered, ordering that the writ of mandate issue, the assessor appeals.

Since the amendment of section 3738 of the Political Code in the year 1907, there has been no further amendment thereof, and the section has never been the subject of a direct repeal. The case for the plaintiff herein rests upon the above-quoted provisions of the section. It is the contention of appellant that by virtue of subsequent legislation there is an implied repeal of this section in so far as it required that "on the first Monday in August the assessor shall return all unused receipts".

Prior to the enactment of section 12½ of article XIII of the Constitution of California (section adopted November 4, 1924), taxes upon taxable notes, debentures, shares of capital stock, bonds, solvent credits, or mortgages (commonly known under the term intangible property) were assessed at the same time and in the same manner as other personal property. The duty of the assessor to assess all property for each fiscal year was provided for by Political Code section 3629. Under that section the duties of the assessor with relation to assessments began on the first Monday of March and, as far as actual assessment was concerned, ended on the first Monday of July of the same year. The only extensions of time for the performance of the duties of the assessor were those provided for in section 3681 during sessions of the county board of equalization, and the provisions

in section 3881 authorizing the correction of clerical errors in the assessment-roll. Aside from such incidental duties on the part of the assessor as were provided by said sections 3681 and 3881 of the Political Code, the power of the county assessor to assess property ceased and terminated in any year on the first Monday in July. Also: "The power of assessment, in matters involving discretion as to the amount thereof, was exhausted when the board of equalization finally adjourned." (*Southwest Land Co.* v. *Los Angeles County,* 46 Cal. App. 9, 13 [188 Pac. 575, 576].)

Sections 3820 and 3821 of the Political Code, as amended from time to time, have authorized and still authorize the assessor to collect the taxes on all property when in his opinion said taxes are not a lien upon real property sufficient to secure payment of the taxes. Unless the time limitation upon the exercise of this power of the assessor has been extended by the subsequent legislation to which we shall hereinafter refer, the right to exercise such power ceases prior to the first day of August. It has been said that such collections by the assessor must be enforced before the meeting of the board of equalization and before the rate for the ensuing year is ascertained and the levy made. (*Rode* v. *Siebe,* 119 Cal. 518, 520 [39 L. R. A. 342, 51 Pac. 869].) The assessor makes his collection according to the rate of the previous year, and provisions are made for subsequent adjustment to correspond with the levy when made, of the current year. It was by reason of this limitation of time for unsecured personal property tax collections by the assessor that section 3738 required that on the first Monday in August the assessor must return to the auditor all unused receipts. It was then provided by section 3790 of the Political Code that the collection of the taxes due on personal property, except when real estate is liable therefor, must be made by the tax collector of the county at any time after receiving from the county auditor the assessment-books. In the year 1931 (Stats. 1931, p. 2501) section 3790 was repealed. There remains in force, however, notwithstanding various amendments, the provision in section 3756 of the Political Code "that the taxes on all personal property unsecured by real property shall be due and payable immediately after the assessment of said personal property is made". We think that this provision of section 3756,

together with its context, may reasonably be construed to mean that the tax collector may collect and receipt for all personal property taxes shown upon the assessment-book delivered to him, including those unsecured by real property, and that the repeal of section 3790 has not taken from him that authority. But as we shall see, this conclusion does not determine the question now before us with relation to the limits of continuance of authority of the assessor in relation to so-called unsecured personal property taxes which have escaped assessment while the tax-roll was being prepared by the assessor.

Section 12½ of article XIII was added to the Constitution of the state by amendment adopted November 4, 1924. It provided for a new rule of assessment, levy and collection of taxes upon so-called intangible personal property, and authorized the legislature by appropriate legislation to carry into effect these new provisions of the Constitution. One of the acts of legislation adopted for this purpose is found in section 3627a of the Political Code, which in its present form is shown in the amendments of 1931. (Stats. 1931, p. 2479.) In that section, after stating the duty of the property owner to make his return to the assessor between the first Monday in March and the first Monday in July, it is further provided: *"Penalties for failure to file return.* In the event of the failure or neglect of any person to return such taxable property between the said dates, it shall, upon the discovery of the escape, be assessed *and levied upon,* and entry thereof immediately made upon the assessment-roll, such entry to be followed by the words 'penalty for failure to file return within the time required by law'. Thereupon, a penalty shall attach to the tax so levied and entered in an amount equal to two times the tax." And further: "The authority herein granted to the assessor to place any tax or penalty upon the assessment or tax roll of the year for which said property should have been assessed or taxed shall be limited to a period of not more than three years from the date upon which the lien attaches for the current assessment-roll."

These various provisions for assessment and collection of taxes of the kind now under consideration, primarily contemplate and intend that such taxes shall be collected by the assessor. The movable and elusive character of the prop-

erty requires that such assessments shall be followed by very prompt collection. It is for this reason that the tax is made collectible immediately upon assessment, and that the assessor (secs. 3820 and 3821) is empowered to make the collection. The additional provisions (quoted above) found in section 3627a, do not change this power or duty, but they merely extend the time within which the power may be exercised. In order that the assessor may properly perform the duty thus cast upon him, it is appropriate, if not necessary, that the assessor be prepared to give to the taxpayer a receipt in the form provided by law. In regular course he has been provided with blank numbered receipts. To take those receipts from the assessor by requiring him to surrender them to the auditor before the expiration of the time allowed for making such assessments and collections, would be to interfere with the performance of an official duty. The legislature, while enacting the law now contained in Political Code section 3627a, either neglected or for some unknown reason omitted to directly repeal that part of section 3738 which requires that on the first Monday in August the assessor shall return to the auditor "all unused receipts"; but the inconsistency between that requirement and the terms of section 3627a is so plain that we must infer that there is an implied repeal of the time limitation. It follows that the judgment directing issuance of the writ of mandate herein is erroneous.

The judgment is reversed.

Houser, J., and York, J., concurred.

'A' petition for a rehearing of this cause was denied by the District Court of Appeal on June 29, 1932, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 28, 1932.