[Civ. No. 3412.   First Appellate District, Division One.—November 1, 1920.]

## SOUTHERN CALIFORNIA HARDWOOD AND MANUFACTURING COMPANY (a Corporation), Appellant, v. COUNTY OF LOS ANGELES, Respondent.

[1] TAXATION—OVERVALUATION OF ASSESSABLE PROPERTY—REMEDY.— The remedy of a property owner for the overvaluation of assessable property is by application to the board of supervisors of the county sitting as a board of equalization for a revaluation of the property, and not that provided in section 3804 of the Political Code for the refunding of taxes erroneously or illegally collected, or paid upon an assessment in excess of the actual cash value of the property so assessed by reason of a clerical error of the assessor.

APPEAL from a judgment of the Superior Court of Los Angeles County. Louis W. Myers, Judge. Affirmed.

The facts are stated in the opinion of the court.

Arthur Wright for Appellant.

A. J. Hill, County Counsel, and Gordon Boller, Deputy County Counsel, for Respondent.

RICHARDS, J.—This is an appeal from a judgment in favor of the defendant in an action brought by the plaintiff to recover the sum of $781.27, claimed to have been received by the defendant through the collection of taxes assessed against the plaintiff's properties and which taxes the plaintiff asserts to have been erroneously and illegally collected.

The facts are practically undisputed, and are embodied in the findings of the court, which may be briefly summarized as follows: The plaintiff in the year 1914 was a lumber manufacturing corporation with its principal place of business in the city of Los Angeles. In the spring of that year, and during the period when assessments of property for purposes of public taxation are made, the plaintiff prepared a statement of its properties subject to taxation and of the deductions to which it claimed to be entitled, and handed the same to a deputy county assessor who called at its place of business for the purpose of receiving said statement. The statement thus prepared placed a valuation of $294,835 upon the unsecured credits and solvent debts due from others, including bank deposits, and also placed a valuation of $294,835 upon the plaintiff's unsecured debts due *bona fide* residents of the state, for which it was entitled under the law to a deduction. It thus appeared that there was no assessable balance upon which the defendant would be entitled to levy or collect taxes. With respect to this statement the trial court finds that its figures were incorrect, but that they were placed therein with the intention that they should be merely tentative and without any intent on the part of plaintiff to mislead or defraud the county assessor. At the time such statement was presented to the deputy assessor the latter, in the presence of the plaintiff's officials and with their knowledge, made certain alterations in the figures contained in said statement, the effect of which was to show that the total assessable assets of the plaintiff amounted to $220,240; that its unsecured debts due to *bona fide* residents of this state, to which it was entitled to a deduction, amounted to $169,835, leaving a balance of assessable property in the sum of $50,405. These latter figures made by the deputy county assessor would also seem to have been tentative and to have been subject to such subsequent changes as the assessor or his said deputy might make after some further investigation as to whether a particular in-

debtedness of the plaintiff was of such a character as to entitle it to have the same deducted in determining the net amount of its taxable assets. The figures thus made up by the deputy county assessor were not, however, changed as the result of any such subsequent investigation, and in consequence the balance of the plaintiff's assessable assets was fixed by the assessor at the sum of $50,405.

Under the provisions of chapter 3 of title IX of the Political Code, county assessors are required to make and complete their assessments of property between the first Monday of March and the first Monday of July of each year, and to embody the same in the assessment-roll, whereupon the board of supervisors of the county is required, under the provisions of title IV of said chapter of the Political Code, to meet and sit between the first Monday and the third Monday in July of each year as a board of equalization, and as such board and under the provisions of section 3673 of said code, "to equalize the assessment of the property contained in said roll and make the assessment conform to the true value of such property in money." Having thus acted it then becomes the duty of the board of supervisors at a time not later than the first Tuesday after the first Monday of September in each year to make the tax levy.

The above procedure was followed in the instant case. The plaintiff, however, did not appear before the board of supervisors sitting as a board of equalization to object to its assessment or to apply for a revaluation of its property, in consequence of which there was levied against its aforesaid assessable assets a tax amounting to the sum of $781.27, which in due course the plaintiff was required to pay, and which sum it has instituted the present action to recover.

The trial court further found that the changes which were made by the deputy county assessor in the plaintiff's statement as to the amount of its unsecured debts were made in the mistaken belief on the part of said official that plaintiff was not entitled to the deduction claimed by it on account of the particular item of indebtedness above referred to; and that in consequence of this mistake the plaintiff's assessable properties were overvalued to the full extent of such assessment, and that in fact there was no balance of assessable asset upon which a tax could be levied.

Upon the foregoing fact the trial court directed a judgment in favor of the defendant, and from such judgment plaintiff prosecutes this appeal.

The sole contention which the appellant urges is that it is entitled to maintain this action under the provisions of section 3804 of the Political Code, which reads as follows: "Any taxes, penalties or costs thereon heretofore or hereafter paid more than once, or heretofore or hereafter erroneously or illegally collected, or any taxes heretofore or hereafter paid upon an assessment in excess of the actual cash value of the property so assessed by reason of a clerical error of the assessor as to the excess in such taxes, or any taxes heretofore or hereafter paid upon an erroneous assessment of improvements on real estate not in fact in existence when said taxes became a lien, may, by order of the board of supervisors, be refunded by the county treasurer."

Appellant having made a demand under this section upon the board of supervisors for an order directing the county treasurer to refund the amount of its taxes collected as aforesaid, and said demand having been refused, it insists that it is entitled to maintain this action.

In order to sustain this contention on the part of the appellant it would be necessary to hold that the taxes for the return of which it sues herein were taxes which had been either "erroneously or illegally collected" or "paid upon an assessment in excess of the actual cash value of the property so assessed by reason of a clerical error of the assessor." It is conceded by the appellant that its assessment in excess of the actual cash value of its assessable properties was not caused by a "clerical error of the assessor," but that its alleged right to recover the same rests solely upon its contention that such taxes were "erroneously or illegally collected."

We are unable to sustain the appellant's contention in this regard. We are directed to no action on the part of the officials of the county of Los Angeles which would render the assessment of the plaintiff's property or the collection of the taxes claimed to be due thereon illegal. The plaintiff's said properties were subject to assessment, and the procedure pursued by the county assessor and by the board of supervisors in making said assessment and in levying said tax were admittedly in accord with the provisions of the

Political Code relating to taxation. Neither do we think that the assessment and levy and the taxes in question was "erroneous" within the meaning of the term as used in section 3804 of the Political Code. It is true, as found by the trial court, that the county assessor was mistaken in his conclusion as to the net amount of the plaintiff's properties subject to assessment and taxation; but it does not follow that merely by reason of said mistake the assessment and taxation of said property was erroneously made. The result of this mistake amounted merely to an overvaluation of the plaintiff's properties, or—which amounted to the same thing in effect—an undervaluation of the appellant's deductible debts; and we are cited to no case which goes to the extent of holding than an overvaluation of assessable properties on the part of the assessor is such an "error" as would entitle the owner of such properties to the remedy provided in section 3804 of the Political Code; but, on the contrary, our attention has been called to a consistent line of decisions by the supreme court and district courts of appeal of this state, holding that the remedy of the property owner in the event of an overvaluation of his property by the assessor is by application to the board of supervisors of the county sitting as a board of equalization for a revaluation of his property.

In the case of *Los Angeles Gas & Electric Co.* v. *County of Los Angeles,* 162 Cal. 164, [121 Pac. 384], the trial court declared it to be the settled rule "that the conclusion of assessing officers as to the value of property for purposes of taxation when honestly arrived at, and when not made in pursuance of some fixed rule or general assessment the result of which is necessarily discriminatory and inequitable, is conclusive on the courts, however erroneous the conclusions of those officers may be."

In the case of *Clunie* v. *Siebe,* 112 Cal. 593, [44 Pac. 1064], the same court held that "the assessment of property for purposes of taxation is a function of the executive branch of the government, and the judiciary has no power to inquire as to the actual value of property for the purpose of taxation in order to determine whether there had been a misrepresentation of its value." And in *San Jose Gas Co.* v. *January,* 57 Cal. 614, said court held that "if an assessor errs in his judgment in determining the value of

property the remedy is by application to the board of equalization and courts will not revise the judgments of assessors upon such questions.''

In *City of Los Angeles* v. *Glassell,* 4 Cal. App. 43, [87 Pac. 241], wherein the question directly arose as to whether the remedy of the taxpayer, in the event of an overvaluation of his property (or, which amounted to the same thing, an undervaluation of his deductible debts), was by an appeal to the board of equalization for the reduction of the amount of his assessment, or whether he could raise the question by way of defense to an action to recover the tax, the court held that an appeal to the board of equalization was the proper remedy; and that failing to make such appeal the property owner was not entitled to urge such defense in an action to recover the tax.

The authorities cited by the appellant as sustaining its contention do not run counter to the foregoing line of cases but, on the contrary, show that in every instance wherein the property owner was held entitled to relief under section 3804 of the Political Code the tax levied against his property was an illegal tax. In the case of *Otis* v. *San Francisco,* 170 Cal. 98, [148 Pac. 933], the tax sought to be recovered was illegal because in excess of the limit of taxation ·fixed by the San Francisco charter. In the case of *Connelly* v. *San Francisco,* 164 Cal. 101, [127 Pac. 834], the tax attempted to be assessed and collected was also one which was not authorized by the terms of said charter. In the case of *Slade* v. *County of Butte,* 14 Cal. App. 453, [112 Pac. 485], the tax in question was illegal because it was a tax upon land belonging to the United States which was not subject to local taxation. In the case of *Stewart Law & Collection Co.* v. *County of Alameda,* 142 Cal. 660, [76 Pac. 481], the tax in question was a county road tax levied upon property situated within the limits of a city, and hence clearly illegal and void; while in the case of *Pacific Coast Co.* v. *Wells,* 134 Cal. 471, [66 Pac. 657], upon which the appellant seems to chiefly rely, the mistake in the assessment arose ''by reason of a clerical error of the assessor.''

[1] None of the foregoing cases touch the point involved in the present appeal; and we are clearly of the opinion

that the trial court was correct in its conclusion that the plaintiff's sole remedy for the overvaluation of his assessable property, and the consequent imposition of a tax thereon which he ought not to have been required to pay, was by application to the board of equalization for a revaluation of his said property. Not having made such application he was not entitled to apply to the courts for relief.

Judgment affirmed.

Waste, P. J., and Welch, J., *pro tem.*, concurred.